## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

I, Charles Sullivan, a Special Agent (S.A.) of the Federal Bureau of Investigation (F.B.I.), United States Department of Justice (D.O.J.), hereinafter referred to as Affiant, being duly sworn under oath, hereby deposes and states as follows:

### INTRODUCTION

1. Affiant is an investigative or law enforcement officer of the United States of America within the meaning of Title 18, U.S.C. § 2510(7) and the Federal Rules of Criminal Procedure, Rule 41(a)(2)(C).  Affiant is empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18, U.S.C. §§ 3052 and 3107; and D.O.J. regulations set forth at Title 28, C.F.R., Sections 0.85 and 60.2(a).

2. Affiant has been employed as a Special Agent of the F.B.I. since February of 1998. While employed by the F.B.I., Affiant has investigated federal criminal violations related to bank robberies, drugs, weapons violations, interstate transportation of stolen property, cyber-crime, child exploitation, child pornography and other general criminal offenses in the Northern District of Ohio.

3. Affiant has gained experience through training, seminars, classes, and everyday work related to conducting these types of investigations.  Affiant has received training in the area of child pornography and child exploitation and has had the opportunity to observe and review numerous examples of child pornography (as defined in Title 18, U.S.C. § 2256) in all forms of media, including computer media.  Moreover, Affiant is a federal law enforcement officer who is engaged in enforcing criminal laws, including Title 18, U.S.C., §§ 2251(a) and 2423(a).

4. Affiant submits this application and affidavit in support of a Complaint authorizing the arrest of Joseph Gunter for violating Title 18, U.S.C., §§ 2251(a) and 2423(a).

5. The statements contained in this Affidavit are based in part on: information provided to me by other F.B.I. Special Agent(s), Deputies and Detective(s) at the Ashtabula County Sheriff's Office (ACSO); written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement officers; information gathered from the service of subpoenas; the results of physical and electronic surveillance conducted by law enforcement officers; independent investigation and analysis by F.B.I. Agents/Analysts and computer forensic professionals; and my experience, training and background as a Special Agent of the F.B.I. Since this affidavit is being submitted for the limited purpose of securing authorization for the requested Complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause for the Complaint.

## STATUTORY AUTHORITY

6. This Complaint concerns violations of Title 18, U.S.C, § 2251(a) which prohibits any person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce; and Title 18, U.S.C, § 2423(a) which prohibits a person from knowingly transporting an individual who has not attained the age of 18 years in interstate or foreign commerce, with intent that the individual engage in any sexual activity for which any person can be charged with a criminal offense.

## BACKGROUND OF THE INVESTIGATION

7. On 09/21/2023, at approximately 10:58 am, an Ashtabula County Sheriff's (ACSO) Deputy was dispatched to a residence in Rome, Ohio 44085 regarding the report of a missing 12-year-old child, whose identity is known to your Affiant but is not disclosed herein in order to protect her identity, whom Affiant will refer to as Victim #1.  The Deputy spoke to the victim's mother, hereinafter WITNESS #1, who advised that her and her boyfriend, hereinafter WITNESS #2, whom both reside at the residence with Victim #1, were awoken at approximately 10:00 am by a text message from Victim #1 which stated she was going for a walk.  Both WITNESS #1 and WITNESS #2 stated that Victim #1 sometimes goes for a walk but is never gone this long.  WITNESS #1 and WITNESS #2 also stated they were unaware of what clothing Victim #1 was wearing when she left but her black and white vans were missing from the shoe rack.  WITNESS #2 subsequently attempted to telephonically contact Victim #1 but his call went to her voicemail.  WITNESS #1 believed Victim #1 did not run away from home, but was abducted.

8. Both WITNESS #1 and WITNESS #2 stated all of Victim #1's friends attended Grand Valley High School and she did not have any other family members in the area they believed she would have traveled to go see.

9. The ACSO dispatch center was able to acquire a "ping" on Victim #1's cellular telephone from her service provider which indicated she was in the area of 6171 US Route 6.  Subsequently, an ACSO Deputy patrolled this area and spoke to the residents at 6171 US Route 6 who advised they had not seen anyone in the area.  ACSO patrol units subsequently conducted an exhaustive search of the surrounding area but were unable to locate Victim #1.

10. ACSO subsequently contacted AT&T, Victim #1's cellular telephone service provider, and obtained a 48-hour continuous "ping" on her cellular telephone. This effort did not reveal any investigative leads.

11. The ACSO, as well as local fire departments, conducted door-to-door interviews and K9 and drone searches in the area surrounding Victim #1's home with negative results.

12. On 09/22/2023, the ACSO obtained consent from WITNESS #1 to conduct a search of Victim #1's laptop computer. An FBI computer forensic examiner subsequently conducted a search of this computer but it did not reveal any investigative leads.

13. On 09/22/2023, an ACSO Deputy was contacted by WITNESS #2 who advised that one of Victim #1's close friends, a minor, whose identity is known to your Affiant but is not disclosed herein in order to protect her identity, whom Affiant will refer to as WITNESS #3, received a message, via Twitter, from Victim #1 on 09/21/2023, at approximately 5:20 pm, which stated "I miss you hope you're ok". WITNESS #3 was later interviewed and divulged that Victim #1 had been communicating with a person on Twitter, since July 2023, whom law enforcement eventually identified at Joseph Gunter, who resided in Albuquerque, New Mexico. WITNESS #3 also stated she was aware that during conversations between Gunter and Victim #1 he encouraged her to lose weight, go on walks and perform self-harm by cutting her legs. WITNESS #3 also disclosed that Victim #1 had sent an image of Gunter to an unknown person on Discord with the following text: "the one who keeps threatening to rape and kidnap me".

14. The ACSO subsequently attempted to locate Gunter's vehicle by querying the 'Flock' safety camera system.  The ACSO discovered Gunter's vehicle was observed by this system on 09/21/2023, at 6:33 pm, in Lexington, Kentucky (SR68 of of I75).  This was approximately 8 hours after Victim #1 was reported missing.

15. Subsequently, a Detective with the ACSO issued an "Emergency Situation Disclosure Form" to Verizon, Gunter's cellular service provider, to provide location information regarding his cellular telephone (505-377-XXXX).  Once received, the Detective provided this information to the Ohio State Highway Patrol who then provided it to law enforcement in Texas, as the location of Gunter's cellular telephone appeared to be located there.

16. On 09/23/2023, at approximately 4:10 pm, the Gray County Sheriff's Office (Texas) was able to locate Gunter's vehicle (A gray 2022 Audi A4 sedan, New Mexico license plate number: BFN-***) and conduct a traffic stop.  During the stop, Gunter and Victim #1 were located along with two guns, and several other items of investigative interest.  Gunter was then arrested and transported to the Randall County jail where he was booked into custody.  Victim #1 was transported to a local hospital for medical care and to have a SANE exam performed.

17. On 09/23/2023, Victim #1 was interviewed at the Bridge Child Advocacy Center in Amarillo, Texas by a Child Forensic Interviewer (CFI).  During this interview, Victim #1 stated she had originally met Gunter on Twitter.  Victim #1 could not recall the account name(s) she or Gunter utilized but recalled "ghosting" him and deleting her account because he was being weird and asking her to send him nude images of herself.  Victim #1 subsequently created a new Twitter account, which Gunter eventually discovered.  Victim #1 then continued to communicate with Gunter using her new account.

18. During the conversations with Gunter, Victim #1 sent him numerous nude images of herself. Also, during these conversations, Victim #1 advised him that she did not want her parents to find out that she had sent nude images of herself to him.

19. Victim #1 stated that on 09/21/2023 she left her home to go on a walk. During her walk Gunter pulled his gray vehicle next to her and made her get in. Gunter told her he had a gun(s) and if she didn't get in his car he would pull his gun out. Victim #1 stated when she got into his car he told her to take her hoodie off, which she did, at which time Gunter began touching her thigh with his hand. Gunter then told Victim #1 to lay her head down on his lap, which she did, at which time he began petting her head with his hand.

20. Victim #1 recalled Gunter putting her cellular telephone into something that had Velcro on it. Gunter advised Victim #1 that he did this so no one could track her cellular telephone and discover her current location.

21. As Gunter and Victim #1 traveled together, Victim #1 stated she did not know where she was and could not recall any landmarks or signs. Victim #1 stated during their trip they stopped at two hotels, the names of both she could not recall. Victim #1 described the first hotel as being "beat up" and that they stayed in room 113. Victim #1 stated when they checked into the hotel Gunter told her to get into the back seat of his car and hide under a blanket. Victim #1 refused to specifically describe what happened in this hotel room "because it was gross". Victim #1 recalled there were two twin beds in the room and the room opened into a hallway. Victim #1 stated when they entered the room she just stood there while Gunter carried a red suite case and a black laptop computer into the room. Victim #1 stated Gunter subsequently pushed her onto one

of the beds, physically assaulted her and raped her several times. Victim #1 stated she did not want to tell anyone what happened because Gunter told her not to tell anyone.

22. Also, while in the first hotel room, Gunter forced Victim #1 to log into her Twitter and Discord accounts so he could change her passwords. Gunter also would not allow Victim #1 to access any of her accounts nor communicate with her friends.

23. The following day they both left the hotel and continued to travel in Gunter's car. Victim #1 recalled eating at a Denny's restaurant and stopping to get gas.

24. Victim #1 stated they both eventually stopped at a second hotel where they stayed two nights. Victim #1 described the second hotel as being nicer than the first, having multiple floors, and the rooms opened into a hallway. Victim #1 stated when they checked into the hotel, Gunter again told her to get into the back seat of his car and hide under a blanket. Victim #1 stated when they entered the room he told her to get on the bed. Victim #1 stated while in the room Gunter again physically assaulted her and raped her on multiple occasions. Victim #1 stated the following morning Gunter made her take a bath to wash her body and her hair.

25. Victim #1 stated while they were traveling, Gunter did use his cellular telephone to communicate with people but she stated the conversations were not long in duration. Victim #1 stated Gunter received a call from her friend, WITNESS #3, approximately 1 hour before they were arrested. Victim #1 stated after this call Gunter seem scared because he thought they were going to be caught.

26. Victim #1 also stated while they were driving in his car Gunter made her touch his "private part" with her hands.  Victim #1 stated Gunter told her want to do with her hands, describing her stroking his penis.

27. During the interview, Victim #1 stated that the scars and cuts on her body were from self-harm.  Victim #1 stated during her online conversations with Gunter he told her to cut herself.  Victim #1 also stated Gunter told her to create videos of her cutting herself and send them to him, which she did.  Victim #1 also stated Gunter sent her razors and box cutters, via the mail, to her house, so she could use these items for self-harm.

28. Victim #1 also stated when she communicated with Gunter online they sometimes discussed her losing weight.  Gunter told her to stop eating for three days at a time to lose weight.

29. Victim #1 stated when the Police stopped them, Gunter told her not to answer any of their questions.

30. Based on the aforementioned factual information your Affiant respectfully submits that there is probable cause to believe that Joseph Gunter knowingly employed, used, persuaded, induced, enticed, and coerced a minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct knowing and having reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce in violation of Title 18, U.S.C, § 2251 (a); and knowingly transported an individual who has not attained the age of 18 years in interstate or foreign commerce, with intent that the individual engage in any sexual activity for which any

person can be charged with a criminal offense, in violation of Title 18, U.S.C., § 2423 (a).

*Charles Sullivan*
Charles Sullivan
Special Agent
Federal Bureau of Investigation

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



*Thomas M. Parker*
Thomas M. Parker
United States Magistrate Judge

2:18 PM, Sep 25, 2023